UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SHAVONE PAGE, | ) |
| | ) |
|     *Petitioner*, | ) |
| | ) |
| v. | )     No.: 3:13-CV-215-PLR-HBG |
| | ) |
| GERALD McALLISTER, Warden, | ) |
| | ) |
|     *Respondent*. | ) |

## MEMORANDUM OPINION

Acting *pro se*, Shavone Page ("Petitioner"), a Tennessee inmate confined in the Northeast Correctional Complex, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the legality of his confinement under a 2008 Knox County, Tennessee judgment [Doc. 2]. Petitioner pled guilty to five counts of especially aggravated kidnapping, three counts of aggravated rape, two counts of aggravated sexual battery, two counts of aggravated robbery, and one count of aggravated burglary [Doc. 2]. Petitioner received a sentence of thirty years. Warden Gerald McAllister ("Respondent") has filed an answer to the petition, which was supported by copies of the state record [Docs. 5, 6, 7]. Petitioner has failed to respond. The case is now ripe for disposition.

### I.     PROCEDURAL HISTORY

Following his guilty plea and sentence, Petitioner did not file a direct appeal to the Tennessee Court of Criminal Appeals, or the Tennessee Supreme Court [Doc. 2]. Petitioner subsequently filed a petition for post-conviction appeal in the Knox County

Criminal Court which was dismissed, and the dismissal was affirmed on appeal by the Tennessee Court of Criminal Appeals ("TCCA"). *Page v. State*, No. E2012-00421-CCA-R3-PC, 2013 WL 68904 (Tenn. Crim. App. Jan. 7, 2013). Petitioner did not appeal the dismissal to the Tennessee Supreme Court. Thereafter, Petitioner filed this timely habeas corpus petition.

## II. BACKGROUND

The factual recitation is taken from the TCCA's opinion upon review of the denial of Petitioner's post-conviction petition.

> This case arises from a home invasion during which the victims were robbed and the female victim was repeatedly raped. The Petitioner and two co-defendants, Dameion Nolan and Michael McMahan, were indicted on charges involving kidnapping, rape, sexual battery, robbery, and burglary. At the guilty plea submission hearing, the State provided the following basis for the guilty plea:
>
>> Your Honor, the proof would show through the witnesses listed on the indictment, that on June 3rd, 2007, these two defendants along with a codefendant by the name of Damien [sic] Nolan, who has already pled guilty in these matters, about 1:30 in the morning approached the residence belonging to Victim 1 and Victim 2 in Knox County.
>>
>> All three of these individuals, in particular these two defendants, the Petitioner and McMahan, gained entry by forcing open a rear door leading into a basement area of the victims' home.
>>
>> All three of these defendants, specifically the Petitioner and Mr. McMahan, were armed with handguns. And after entering the home made their way up a flight of stairs into the main living area of the Victims' home.
>>
>> All three armed defendants then entered the bedroom of the victims, where they were both in their bed asleep. And he was awakened, Victim 1 was struck in the head with a gun and pistol whipped by these defendant[s] acting in concert.

They were forced out of their bed at gunpoint, ordered to lay down on the bedroom floor on a rug that was adjacent to the bed. Very early on in this encounter Victim 2 was forced to remove her clothing. Both victims were thereafter tied up with belts found among the victims' clothing in the bedroom.

All three defendants managed to know where the victim[s] kept their money. Victim 1 at the one point indicated that he kept his credit cards in a downstairs office, and offered to give those credit cards to the defendants.

Mr. McMahan and Mr. Nolan thereafter escorted Victim 1 at gunpoint to his downstairs office where he gave Mr. Nolan and Mr. McMahan his credit cards. In particular[,] one bank card together with the pin number for the bank card that he uses at SunTrust Bank.

While downstairs at some point in time, these defendants acting in concert also stole from Victim 1 a collection of state quarters valued at approximately $3,000 and used one of Victim 1's camera bags to conceal and ultimately remove these quarters from the home.

While Nolan and McMahan confined Victim 1 downstairs, the Petitioner still in the bedroom with Victim 2, confined her there at gunpoint and forced her to perform oral sex on him at gunpoint.

During the course of that[,] the Petitioner ejaculated inside Victim 2's mouth leaving DNA material that caused Victim 2 to be on the verge of throwing up. When she reported that to the Petitioner that she was about to throw up, he made statements to the effect, "if you throw up, I'll blow your head off."

Victim 1 was ultimately returned to the bedroom at gunpoint and forced to lie down on the floor and watch as Victim 2 was forced at gunpoint to have oral sex with the other two defendants. During the sexual encounter with these two defendants, Defendant McMahan and the Petitioner attempted vaginal rape initially by touching the vaginal area with the finger and later attempting to penetrate with the penis. But this act was not completed.

At one point Victim 2 was removed at gunpoint to a downstairs area to show all of these defendants where the surveillance camera's power switch was, and was forced to turn it off.

While in the bedroom, all of the defendants, while armed with and using deadly weapons, forced Victim 2 to show them where her jewelry was within the bedroom closet area. She showed them and turned over items jewelry to them as demanded.

This entire ordeal and confinement lasted in excess of two, during which these defendants, in particular Mr. McMahan and the Petitioner, repeatedly ordered these victims not to move or talk or that they would blow their heads off.

The defendants eventually fled out the bedroom door onto a patio, a deck area, and through an obscured patio door onto the ground and into a waiting car.

At approximately 4:04 a.m. that same morning at a SunTrust Bank on Cedar Bluff Road, Mr. Nolan is observed on a security camera using the victim's ATM card to withdraw $500.00. The cameras also captured the presence of two other individuals in the car.

Using these pictures, Damien Nolan was identified by witnesses as the driver of the car and the person that used the ATM card to withdraw this money.

Mr. Nolan gave the names of the Petitioner and Michael McMahan as two individuals with whom he had been that night.

The car driven by Mr. Nolan was later searched pursuant to the search warrant and a ring belonging to Victim 2 was found inside the glove compartment.

On June 5th, 2007, a heart shaped pendant belonging to Victim 2 was recovered from Charlie's Pawn Shop on Kingston Pike. She later positively identified that item as belonging to her, and one of the items that was taken during this home invasion.

DNA samples eventually were collected from all three of the defendants, and compared against the evidence obtained during the processing of the crime scenes, specifically the

4

> rug area where Victim 2 was able to spit out the substance in her mouth onto the rug, there was blood on that rug that came back to Victim 1 from where he had been hit in the head and cut and bled on that rug. There was semen evidence from Mr. McMahan and the Petitioner isolated from the examination of the rug and bed sheet on the floor also.
>
> The swabs indicated the sperm of the Petitioner and Mr. McMahan in these samples from the rug and the sheets. And that DNA sample matched the Petitioner and McMahan to the conclusion of anyone else in the world.
>
> The defendants were later taken into custody. A brief interview was had with the Petitioner, he acknowledged receiving $160.00 of the $500.00 taken from the use of the debit card but denied any other involvement in this home invasion.

The petitioner agreed that these are the facts that the State would prove had the case gone to trial, he was not on any medications, and he understood his constitutional rights and the ramifications of pleading guilty. Then, based upon this evidence and the Petitioner's acknowledgments, the trial court accepted the Petitioner's plea of guilty to five counts especially aggravated kidnapping, three counts of aggravated rape, two counts of aggravated sexual battery, one count of aggravated robbery, and one count of aggravated burglary, in exchange for an effective sentence of thirty years, to be served at 100%.

*Page*, 2013 WL 68904, at * 1–3 (footnote omitted).

On post-conviction, the trial court held a combined hearing for Petitioner and his co-defendants. *Id*. at *3 n.2. During the post-conviction hearing, both Petitioner and his trial counsel testified. The TCCA summarized the trial court's factual findings in its opinion. *Id*. at *3–8.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2241, *et seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment: (1)

5

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)) (noting that § 2254(d), as amended by AEDPA is a purposefully demanding standard . . . 'because it was meant to be.'"). Furthermore, findings of fact which are sustained by the record are entitled to a presumption of correctness. This presumption may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

6

## IV. ANALYSIS

Petitioner's § 2254 habeas corpus petition raises two main grounds for relief: (1) that Petitioner was denied a full and fair hearing and due process of the law during his post-conviction hearing; and (2) that Petitioner received ineffective assistance of counsel during his guilty plea proceedings [Doc. 2].

In his answer, Respondent argues that Petitioner is not entitled to relief on his first ground because it is procedurally defaulted, as Petitioner only presented this claim in terms of a state-law rule of evidence [Doc. 7]. Respondent next argues that Petitioner's claim of ineffective assistance of counsel should be denied because the state court's determination was not contrary to nor an unreasonable application of clearly established federal law, as determined by the United States Supreme Court [Doc. 7].

The Court agrees with the Respondent concerning the Petitioner's entitlement to habeas relief, and will **DENY** and **DISMISS** this petition, for the reasons provided below.

### A. Procedural Default

#### 1. Applicable Law

Under 28 U.S.C. § 2254(b), a federal court's jurisdiction to a hear habeas claim is limited to those cases in which a petitioner has exhausted all available state-court remedies. The statute provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective processes; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b); *see also Granberry v. Greer*, 481 U.S. 129, 133–34 (1987); *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

A Petitioner must present each factual claim to the state court as a matter of federal law. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996) ("It is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar [s]tate-law claim was made.").

At bottom, a claim sought to be vindicated in a federal habeas proceeding must have been raised in the state courts so that the state courts have the first opportunity to hear the claim. If the state court decides such a claim on an adequate and independent state ground, the petitioner is barred from seeking federal habeas review, unless he can show cause and prejudice for the default. *Edwards v. Carpenter*, 529

8

U.S. 446 (2000). Cause for a procedural default depends on some "objective factor external to the defense" that interfered the with the petitioner's efforts to comply with the procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## 2. Discussion

Petitioner's first ground for relief asserts that he was denied due process of law under the Fourteenth Amendment because the post-conviction court denied his request for his trial counsel to be excluded during Petitioner's testimony at the hearing. Petitioner argues that the court's refusal to grant his request violated Rule 615 of the Tennessee Rules of Evidence, and allowed his trial counsel to tailor his testimony to Petitioner's earlier testimony during the post-conviction hearing [Doc. 2].

Respondent correctly points out that this claim was only presented in state court in terms of state law and is, therefore, procedurally defaulted. Respondent contends that Petitioner has not alleged cause and prejudice to excuse his procedural default, nor can he show prejudice given the TCCA's dismissal of his claim based on Tennessee Rule of Evidence 615.

As stated earlier, a state prisoner must exhaust all constitutional claims, by fully and fairly presenting them in state court, before a federal court can consider them in a habeas proceeding. 28 U.S.C. § 2254(b)(1)(A), (C). Petitioner's failure to present his violation of due process claim to the Tennessee courts as a matter of federal law has resulted in a procedural default of the claim. *See Duncan*, 513 U.S. at 366. Petitioner has not alleged any grounds upon which the Court can excuse this procedural default.

9

According, Petitioner's claim that he was deprived of a full and fair hearing in violation of the Due Process Clause will be **DISMISSED** as procedurally barred from habeas review.

### B. Ineffective Assistance of Counsel

Petitioner next asserts that he received ineffective assistance from his attorney during his guilty plea hearing [Doc. 2]. According to Petitioner, his trial counsel failed to fully explain the nature and consequences of the plea, and because of his lack of intelligence, he was unable to fully understand the nature of the constitutional rights he was waiving. Petitioner also claims that counsel failed to fully investigate his case [Doc. 2].

#### 1. Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies a right to "reasonably effective assistance" of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The appropriate measure of attorney performance is

10

"reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* Here, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moss*, 323 F.3d at 454–55 (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 2. Discussion

Petitioner challenged the effectiveness of his counsel during his plea hearing, arguing to the TCCA that counsel did not adequately investigate his case and did not explain the nature and extent of the charges Petitioner was facing. *Page v. State*, 2013 WL 68904, at *10. The court of appeals, applying *Strickland v. Washington*, concluded that Petitioner had not met his burden of proving deficient performance or prejudice. *Id.* at *11. Thus, the task before the Court is to determine whether the state court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

The crux of Petitioner's claim of ineffective assistance of counsel challenges the voluntariness of his guilty plea. Petitioner claims that he did not knowingly enter a plea of guilty because his counsel did not adequately advise him of all his constitutional rights, and because of his lack of intelligence and the fact that he was a minor when he was charged with the offenses, his counsel and the trial court should have been more thorough in determining whether he knew what constitutional rights he was waiving [Doc. 2]. Petitioner also claims that his counsel failed to interview either of the victims to ascertain their ability to identify him, or determine their recollection of the crime [Doc. 2].

*Strickland* affirms that a defendant is entitled to effective assistance of counsel before deciding whether or not to plead guilty. 466 U.S. at 686 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). *Strickland* also imposes upon an attorney "the obligation to investigate all witnesses who may have information concerning his client's

12

guilt or innocence." *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)).

As recounted by the TCCA, counsel testified during the post-conviction hearing that he spent "quite a bit of time" going over the case with Petitioner. *Page*, 2013 WL 68904, at *6. Counsel further testified that it was not until learning about the state's evidence against Petitioner that he determined that the case was not one that could be won. *Id.* According to counsel, he discussed this with both Petitioner and Petitioner's mother, and Petitioner knew the charges and knew his case. *Id.* at *7 Counsel testified that regardless of this, he had investigated the case and was ready to proceed to trial. *Id.* Counsel also testified that he went over every charge in the plea agreement in detail, and that Petitioner was aware that his sentence involved lifetime supervision. *Id.* at *7–8.

While Petitioner testified to the opposite at his post-conviction hearing, he has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Petitioner has not shown that there was no thorough investigation of the victims or of his case; instead, he merely testified that he never discussed with counsel whether counsel had interviewed any witnesses in the case. *See, e.g., Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing that the petitioner had failed to "overcome the 'strong presumption' that his trial counsel conducted a reasonable investigation" (citation omitted)). Regardless, Petitioner has not shown that if counsel had conducted any further investigation, he would not have pled guilty.

13

The Court finds that relief is not warranted here because the TCCA's rejection of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of *Strickland*, and because the state court did not unreasonably determine the facts before it.

## V.     CONCLUSION

Based on the above legal principles and reasoning, the Court finds that none of Petitioner's claims warrant issuance of a writ and, therefore, Petitioner's petition for a writ of habeas corpus [Doc. 2] will be **DISMISSED.**

## VI.    CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude that the issues raised are adequate to deserve further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been dismissed on procedural grounds, a substantial showing is demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that Petitioner's claim is adequate to deserve further review, nor

would reasonable jurists debate the correctness of the Court's procedural ruling. As such, because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

ORDER ACCORDINGLY.

_____
**UNITED STATES DISTRICT JUDGE**